IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| Plaintiff, | ) | Civil No. 4:20-cv-00029 |
| v. | ) | |
| TWELVE FIREARMS, and ASSORTED AMMUNITION, | ) | |
| Defendants. | ) | |

**VERIFIED COMPLAINT FOR FORFEITURE *IN REM***

COMES NOW PLAINTIFF UNITED STATES OF AMERICA, and hereby states its complaint in this civil forfeiture matter in conformity with Supplemental Rule for Admiralty or Maritime Claims and Asset Forfeiture G(2), including its statement of facts supporting a reasonable belief that the government will be able to meet its burden at trial.

## I. NATURE OF THE ACTION

1. This is an action to forfeit property to the United States, pursuant to 18 U.S.C. § 924(d)(1).

## II. DEFENDANT *IN REM*

2. The United States seeks to forfeit twelve (12) firearms and assorted ammunition, described more specifically as follows:

| Item | Description |
|---|---|
| 1 | An F.N. (FN Herstal) Five-Seven pistol (serial number 386344895) |
| 2 | A Ruger 10/22 rifle (serial number 0004-48732) |
| 3 | A Henry Repeating Rifle Company H010 rifle (serial number WFF2016516) |
| 4 | A Savage Arms Inc. (CD) 5 rifle (serial number 1647249) |
| 5 | A Savage 10 rifle (serial number K924031) |

| Item | Description |
|---|---|
| 6 | A Savage 10 rifle (serial number K317747) |
| 7 | A Remington Arms Company Inc. 870 shotgun (serial number W412131V) |
| 8 | A Remington Arms Company, Inc. 504 rifle (serial number M72094398) |
| 9 | A Ruger rifle (serial number 698-61037) |
| 10 | A Heritage Mfg. Inc. pistol (serial number P34512) |
| 11 | A Diamondback Arms Inc. DB-15 rifle (serial number DB1705811) |
| 12 | A Smith & Wesson M&P 9 Shield pistol (serial number JCF9249); and |
| 13 | Approximately 1,414 rounds of assorted ammunition |

### III.   JURISDICTION AND VENUE

3.   This Court has jurisdiction over an action commenced by the United States, under 28 U.S.C. § 1345, and over an action for forfeiture, under 28 U.S.C. § 1355(a).

4.   This Court has *in rem* jurisdiction over the Defendant property under 28 U.S.C. § 1355(b) and § 1395(b), because the acts or omissions giving rise to the forfeiture occurred in this district and because the Defendant property was seized from and located in this district. The Defendant property is in the possession of the U.S. Bureau of Alcohol, Tobacco, Firearms and Explosives (hereinafter "ATF") in its evidence vault in Des Moines, Iowa.

### IV.   BASIS FOR FORFEITURE

5.   The Defendant property is subject to forfeiture pursuant to 18 U.S.C. § 924(d)(1) as firearms and ammunition involved in or used in a knowing violation of 18 U.S.C. § 922(g)(3). Pursuant to 18 U.S.C. § 922(g)(3), it is unlawful for any person who is an unlawful user of or addicted to any controlled substance, as defined in 21

U.S.C. § 802, to possess any firearms or ammunition that have been shipped or transported in interstate foreign commerce.

## V.   FACTS

6.   The "Controlled Substances Act" was enacted by Congress as Title II of the "Comprehensive Drug Abuse Prevention and Control Act of 1970," Pub.L. No. 91-513, 84 Stat. 1236 (1970) (codified at 21 U.S.C. §§ 801-904).

7.   The term "controlled substance" is defined in 21 U.S.C. § 802(6) to mean a drug or other substance, or immediate precursor, included in any of the five schedules of such substances set forth in subchapter I of Title 21.

8.   Schedule I substances have a high potential for abuse, have no currently accepted medical use in treatment in the United States, and there is a lack of accepted safety for use of these controlled substances under medical supervision. 21 U.S.C. § 812(b)(1)(A)–(C).

9.   Only persons registered by the Attorney General of the United States, in accordance with rules and regulations promulgated by the Attorney General, may legally manufacture or distribute controlled substances. 21 U.S.C. § 822(a), (b).

10.   Under the Controlled Substances Act, it is unlawful to distribute, dispense, or possess with intent to distribute, a controlled substance, unless authorized by law to do so. 21 U.S.C. § 841(a)(1).

11.   Under the Controlled Substances Act, it is unlawful to knowingly possess a controlled substance, absent certain circumstances. 21 U.S.C. § 844(a).

12.   Marijuana is a Schedule I controlled substance under the Controlled Substances Act.

13. At approximately 6:05 a.m. on or about September 5, 2019, law enforcement executed a federal search warrant at 2840 Fawn Avenue, Winterset, Iowa.

14. This location was the residence of Brandon Kiddoo, Megan Kiddoo, and their minor children.

15. Brandon Kiddoo, Megan Kiddoo, and their minor children were home at the time the federal search warrant was executed.

16. Pursuant to the federal search warrant law enforcement officers lawfully gained entry to the residence, searched the residence, and found the property described below.

17. In the northwest bedroom of the residence, law enforcement officers found two plastic baggies containing marijuana, located on a shelf above the bed.

18. On a nightstand in the northwest bedroom, law enforcement officer found a multi-colored brown and yellow pipe containing a discernable amount of marijuana.

19. The northwest bedroom was the bedroom of Brandon and Megan Kiddoo.

20. In the living room, law enforcement recovered a metal marijuana pipe, from inside the pocket of Brandon Kiddoo's motorcycle vest.

21. Inside the left saddle bag of Brandon Kiddoo's Harley Davidson motorcycle at the residence, law enforcement found a loaded black, F.N. (FN Herstal) Five-Seven pistol (serial number 386344895) and one round of ammunition, as well

as a loaded magazine that fit in this firearm. Also in the saddle bag were two other magazines for this firearm.

22. Numerous rounds of ammunition were found inside a red Dodge Charger registered to Brandon Kiddoo, which was at the residence.

23. A cardboard shipping box was found in the closet of the living room, which contained 144 rounds of miscellaneous ammunition.

24. A Henry Repeating Rifle Company H010 rifle, serial number WFF2016516 was found in the living room of the residence.

25. A Savage Arms Inc. (CD) 5 rifle and magazine, serial number 1647249 was found in the living room of the residence.

26. A Savage 10 rifle and magazine, serial number K924031 was found in the living room of the residence.

27. A Savage 10 rifle and magazine, serial number K317747 was found in the living room of the residence.

28. A Remington Arms Company, Inc. 870 shotgun, serial number W412131V loaded with three 12-gauge shotgun slugs in the magazine were found in the living room of the residence.

29. A cardboard box containing 379 miscellaneous ammunition rounds and two rifle rounds were found in the living room closet of the residence.

30. A Remington Arms Company, Inc. 504 rifle, serial number M72094398 was found in the living room of the residence.

31. A Ruger rifle, serial number 698-61037 was found in the living room of the residence.

32. A Heritage Mfg. Inc. pistol, fully-loaded with six (6) rounds of ammunition, serial number P34512 was found on a dresser located in the living room of the residence.

33. Seventy-eight (78) rounds of assorted ammunition was found in the living room closet.

34. A Diamondback Arms Inc. DB-15 rifle, serial number DB1705811 was found in a motorcycle trailer parked in the northeast corner of the residence, which was registered to Brandon Kiddoo, and which was decorated with a sticker which read "Support Your Local Sons of Silence MC." Also in the trailer were 89 rounds of assorted ammunition.

35. Law enforcement also discovered in the residence numerous shirts bearing the "Sons of Silence" logo or phrases associated with the motorcycle group.

36. The Sons of Silence Motorcycle Club (SOSMC) is a highly-structured motorcycle club, with which Brandon Kiddoo is associated. SOSMC members have been known to typically collect or stockpile firearms, ammunition, and other ordinance.

37. A Smith and Wesson M&P 9 Shield 9mm pistol with one round of ammunition, serial number JCF9249 and one magazine loaded with ammunition was located in the gray Dodge Charger.

38. A Ruger 10/22 rifle, serial number 0004-48732, a magazine, and related ammunition was found in the living room of the residence.

39. One hundred sixty-two (162) rounds of miscellaneous ammunition was found in the east side entry way of the residence.

40. During the course of the search, law enforcement officers also discovered numerous other rounds of ammunition.

41. During the search, Brandon Kiddoo consented to be interviewed by law enforcement.

42. Brandon Kiddoo was read his *Miranda* rights, acknowledged he understood them, and agreed to talk with law enforcement.

43. Brandon Kiddoo was advised he was not under arrest.

44. Brandon Kiddoo admitted he had a firearm stored in the saddle bag of his motorcycle.

45. Brandon Kiddoo admitted there was marijuana in the residence, and originally claimed it belonged only to Megan.

46. Brandon Kiddoo also admitted he was a drug user, smoking marijuana once or twice a week and on weekends.

47. Brandon Kiddoo admitted he had smoked marijuana the night prior to the interview.

48. According to drug testing, Brandon Kiddoo, in fact, still had traces of using marijuana in his body at the time he was being interviewed.

49. Eventually, Brandon Kiddoo admitted the marijuana in the bedroom belonged to he and his wife, Megan.

50. Brandon Kiddoo declined to answer when asked if he had ever seen a member of the Sons of Silence Motorcycle Gang with a gun, but denied he had ever loaned a gun to a member of the Sons of Silence.

51. Brandon Kiddoo said it was a "possibility" that he was, in fact, a member of the Sons of Silence.

52. Brandon Kiddoo answered "maybe" when asked if he was "prospecting" with the Sons of Silence.

53. Brandon Kiddoo knew some of the firearms were loaded, and even warned law enforcement to be careful with the firearms that were loaded.

54. During his interview, Brandon Kiddoo, stated he had a permit to carry a concealed weapon and that all of the guns were his guns.

55. During his interview, Brandon Kiddoo stated he had four pistols and that his wife, Megan Kiddoo, carried a 9mm Smith & Wesson handgun.

56. During his interview, Brandon Kiddoo, Kiddoo stated "there was one pipe that we use and that's it."

57. During the interview with Brandon Kiddoo, Kiddoo stated he was done answering questions and that his wife's gun was in his name and it is the one she carries.

58. Megan Kiddoo was, likewise, read her *Miranda* rights, which she understood, and she agreed to be interviewed by law enforcement.

59. During Megan Kiddoo's interview, she explained to law enforcement that the marijuana in the residence belonged to her and her husband, Brandon Kiddoo.

60. Megan Kiddoo also stated the 9mm Smith & Wesson handgun seized from the center consul of her car was hers.

61. After the firearms and ammunition were seized by ATF, ATF initiated timely administrative forfeiture proceedings against them.

62. On or about October 29, 2019, Brandon Kiddoo contested the administrative forfeiture, and filed claims and petitions to the following firearms and ammunition:

| No. | Asset Identification Number | Asset Description | Claimed Interest |
|---|---|---|---|
| 1 | 19-ATF-037776 | Firearms - Savage ****4031, seized by the ATF on September 5, 2019 in Winterset, Iowa. | Owner |
| 2 | 19-ATF-037777 | Firearms - Savage ****7747, seized by the ATF on September 5, 2019 in Winterset, Iowa. | Owner |
| 3 | 19-ATF-037778 | Firearms - Remington Company, Inc. ****131V, seized by the ATF on September 5, 2019 in Winterset, Iowa. | Owner |
| 4 | 19-ATF-037787 | Firearms - Remington Company, Inc. ****4398, seized by the ATF on September 5, 2019 in Winterset, Iowa. | Owner |
| 5 | 19-ATF-037790 | Firearms - Ruger, SN ****1037, seized by the ATF on September 5, 2019 in Winterset, Iowa. | Owner |
| 6 | 19-ATF-037792 | Firearms - Heritage Arms Company, Inc. SN ****4512, seized by the ATF on September 5, 2019 in Winterset, Iowa. | Owner |
| 7 | 19-ATF-037794 | Firearms - Diamondback Arms, Inc. SN ****5811, seized by the ATF on September 5, 2019 in Winterset, Iowa. | Owner |
| 8 | 19-ATF-037796 | Firearms - Smith & Wesson, SN ****9249, seized by the ATF on September 5, 2019 in Winterset, Iowa. | Owner |
| 9 | 19-ATF-037750 | Firearms - F.N. (FN Herstal), SN ****4895, seized by the ATF on September 5, 2019 in Winterset, Iowa. | Owner |
| 10 | 19-ATF-037755 | Firearms - Ruger, SN ****8732, seized by the ATF on September 5, 2019 in Winterset, Iowa. | Owner |

| No. | Asset Identification Number | Asset Description | Claimed Interest |
|---|---|---|---|
| 11 | 19-ATF-037759 | Firearms - Henry Repeating Rifle Company, SN - ****6516, seized by the ATF on September 5, 2019 in Winterset, Iowa. | Owner |
| 12 | 19-ATF-037760 | Firearms – Savage Arms, Inc., SN ****7249, seized by the ATF on September 5, 2019 in Winterset, Iowa. | Owner |
| 13 | 19-ATF-037799 | 1405 rounds of ammunition, seized by the ATF on September 5, 2019 in Winterset, Iowa. | Owner |
| 14 | 19-ATF-038051 | 9 rounds of ammunition, seized by the ATF on September 5, 2019 in Winterset, Iowa. | Owner |

63. To contest the administrative forfeiture, Brandon Kiddoo electronically filed Claim 198E-864-750-B7A on or about October 29, 2019.

64. In Claim 198E-864-750-B7A, Brandon Kiddoo represented the following:

　　a) He claimed four (4) firearms, namely the F.N. Herstal, a Ruger, and Henry Repeating Rifle Company, and a Savage Arms Inc.

　　b) He stated under penalty of perjury that that "[t]hese guns are all legally registered and they are mine. I want them back, because they are mine."

　　c) He stated under penalty of perjury he did not "keep my paperwork on anything. Never expected the ATF to come steal all my guns."

65. To contest the administrative forfeiture, Brandon Kiddoo electronically filed Petition 198-EEB-126-D53 on or about October 29, 2019.

66. In Petition 198-EEB-126-D53, Brandon Kiddoo represented the following:

　　a) He claimed he was the owner of four (4) firearms, namely the F.N. Herstal, a Ruger, and Henry Repeating Rifle Company, and a Savage Arms Inc.

10

  b) However, he later claimed the Ruger "was also purchased new as a gift from me to my kids." He did not identify the names of the children who allegedly owned this firearm, and no claim was filed on behalf of any child.

  c) Additionally, he also later claimed the "Henry 45-70 rifle belongs to Lance Killian, and is kept at my place for hunting purposes."

  d) Also, he later stated "the Savage .22 mag (1647259) is a synthetic stock, stainless steel, bull barrel, bolt action gun with a matching bushnell scope mounted to it. This one was bought used by me for my kids." He did not identify the names of the children who allegedly owned this firearm, and no claim was filed on behalf of any child.

  e) He alleged he was an innocent owner of the firearms he was claiming.

  f) He stated, "I usually do not keep my papers when buying weapons, as I did not think the atf was going to kick in my door and steal them all. I do have some books that come with many of these weapons, as well as the cases they come in. If need be, I can contact the stores they were bought from and possibly get paperwork for most of them. You guys took them from my house, you know they are mine."

67. To contest the administrative forfeiture, Brandon Kiddoo filed Claim 198E-67C-CD3-5D8 on or about October 29, 2019.

68. In Claim 198E-67C-CD3-5D8, Brandon Kiddoo represented the following:

  a) He was claiming 8 firearms, 1405 rounds of ammunition, and 9 rounds of ammunition.

  b) He stated under penalty of perjury, the firearms "are all registered and legal, and belong to me. Except for the remington 870 and the henry 45-70, which belong to Lance Killian, but are stored at my place so he can use them to hunt when he is back."

  c) He stated "I do not keep most of my paperwork, was not planning on getting my guns stolen by the ATF."

11

69. To contest the administrative forfeiture, Brandon Kiddoo electronically filed Petition 198-CFB-260-CAE on or about October 29, 2019.

70. In Petition 198-CFB-260-CAE, Brandon Kiddoo represented the following:

   a) He claimed under penalty of perjury to be the owner of 8 firearms, 1405 rounds of ammunition, and 9 rounds of ammunition.

   b) He claimed under penalty of perjury the "2 savage model 10 rifles . . . are the guns my son and I used in competition . . ."

   c) He also claimed under penalty of perjury, and inconsistently with his earlier claim to own all the firearms, that the "Remington arms 870 . . . is owned by Lance Killian and is one of his hunting guns. He hunts with us when he is back in the state."

   d) He also claimed under penalty of perjury, and inconsistently with his earlier claim to own all the firearms, to be "unsure" who owned the other remington firearm, thereby disclaiming an ownership interest he had sworn was his.

   e) He claimed under penalty of perjury to be an innocent owner of the firearms and ammunition.

   f) He asked the ruling official to consider extenuating circumstances in support of his requests, namely that "Yeah, I want my stuff back."

   g) He denied having any documentary proof that he owned the firearms and ammunition, stating, "[a]gain, I usually do not keep my receits when i purchase things. I was not really expecting the ATF to break into my house and steal my weapons collection. If needed, I should be able to visit many of the local gun shops and get paperwork if need be."

71. Contrary to Brandon Kiddoo's admission to federal agents that he was a drug user, the documents he filed with ATF represented that he was an innocent owner and did not know of the conduct giving rise to the forfeiture.

72. The firearms seized from the Kiddoo residence were not displayed or stored in a manner typical for a firearms collection.

73. Brandon Kiddoo did not provide any contact information for a "Lance Killian" nor even advise ATF in what state he allegedly resides.

74. Megan Kiddoo did not file a claim or petition for the 9mm Smith & Wesson handgun she claimed was hers, nor did Brandon Kiddoo mention her alleged interest in it in the claims and petitions he filed with ATF.

75. ATF published notice of its attempted administrative forfeiture.

76. No one other than Brandon Kiddoo filed a claim or petition with ATF concerning any of the firearms and ammunition.

77. On October 31, 2019, the ATF sent Brandon Kiddoo a letter in which it notified him that, based on certain representations he had made in the documentation discussed above, that "ATF cannot accept petitions on behalf of other parties." Thus, his petition was denied as to the Henry Repeating Rifle Company H010 Rifle, the Remington Arms Company, Inc. 870 Shotgun, and the Remington Arms Company, Inc. 504 Rifle.

78. On September 19, 2019, ATF spoke with Lance Killian by telephone. Killian stated he is an over-the-road truck driver and is home once every three months for approximately 1-2 weeks a year. Killian is friends with Brandon Kiddoo. Killian said he is the owner of the Henry Repeating Rifle Company that was identified as rifle model H010, with serial number WFF2016516. This firearm was located at Brandon Kiddoo's residence. Killian stated he had loaned the firearm to Kiddoo's son for deer hunting. This was the only firearm seized by ATF that Killian stated he owned.

79.     The October 31, 2019 letter from ATF also notified Brandon Kiddoo that "Lance Killian as owner of the property may still file a petition if he desires." ATF attached a petition form to the letter, and advised Brandon Kiddoo "**ATF must receive Lance Killian's claim within 30 calendar days** from the date stamped at the top of this letter." ATF provided the address to which Killian should mail his petition. Finally, the letter advised "If ATF does not receive the corrected petition within the deadline, it will be denied. Which may result in the administrative forfeiture of the property under federal law."

80.     Lance Killian never contested the administrative forfeiture.

81.     The Defendant firearms were shipped or transported in interstate or foreign commerce.

82.     Brandon Kiddoo possessed all of the Defendant firearms and ammunition at a time when he was a knowing user of marijuana, a Schedule I Controlled Substance under federal law.

83.     As a user of marijuana, Brandon Kiddoo was illegally prohibited from possessing marijuana and ammunition on September 5, 2019.

84.     Because Brandon Kiddoo was legally prohibited under federal law from possessing firearms and ammunition on September 5, 2019, federal law authorizes the forfeiture of all such firearms and ammunition he illegally possessed.

85.     On September 5, 2019, Brandon Kiddoo knew both that he was a user of marijuana and that he possessed the Defendant firearms and ammunition.

86.     Brandon Kiddoo illegally possessed the firearms and ammunition listed as Defendants in this case because he was a prohibited person, namely a user of

marijuana, at the time he possessed them on September 5, 2019, therefore they are forfeitable under federal law.

## CLAIM FOR RELIEF

For the reasons set forth above, the Defendant property should be forfeited to the United States as the property was involved or used in a violation of 18 U.S.C. § 922(g)(3), making it unlawful for any person who is an unlawful user of or addicted to any controlled substance, as defined in 21 U.S.C. § 802, to possess any firearms or ammunition which have been shipped or transported in interstate foreign commerce.

Respectfully submitted,

Marc Krickbaum
United States Attorney

By: /s/ Craig Peyton Gaumer
Craig Peyton Gaumer
Assistant United States Attorney
U. S. Courthouse Annex, Suite 286
110 East Court Avenue
Des Moines, Iowa 50309
Tel: (515) 473-9317
Fax: (515) 473-9292
Email: craig.gaumer@usdoj.gov

## VERIFICATION

I, Matthew Jenkins, state that I am a Special Agent with the Bureau of Alcohol, Tobacco Firearms and Explosives (ATF), I have read the foregoing Verified Complaint *In Rem* and know its contents, and that the matters contained in the Verified Complaint are true and correct to the best of my knowledge.

The sources of my knowledge and information and the grounds of my belief are the official files and records of the United States, and information supplied to me by other law enforcement officers, as well as my investigation of this case, together with others, as an ATF Special Agent.

I hereby verify and declare under penalty of perjury that the foregoing is true and correct.

Dated: January 23, 2020.

_____
Special Agent, Matthew Jenkins
Bureau of Alcohol, Tobacco, Firearms & Explosives